UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **RIVERPORT INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:15-cv-00297 |
| ) | REEVES/SHIRLEY |
| **COUNTRYWIDE PAYROLL & HR** ) | |
| **SOLUTIONS, INC.; WORLDWIDE** ) | |
| **STAFFING RESOURCES, INC.;** ) | |
| **COUNTRYWIDE HOLDINGS, INC.;** ) | |
| **COUNTRYWIDE PEO, INC.;** ) | |
| **COUNTRYWIDE INSURANCE** ) | |
| **SOLUTIONS, INC.; COUNTRYWIDE** ) | |
| **FUNDING and MERCHANT** ) | |
| **PROCESSING, INC.; WORLDWIDE** ) | |
| **EMPLOYMENT SERVICES, INC.;** ) | |
| **WORLDWIDE HR OUTSOURCING, LLC;** ) | |
| **and SUNZ INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Riverport Insurance Company brings this action against the Countrywide defendants asserting claims for declaratory judgment, asking the court to declare the rights and other legal relations of the parties regarding policies of workers' compensation insurance issued to the Countrywide defendants by Riverport, as well as for breach of contract and rescission. Riverport contends Countrywide obtained policies from SUNZ Insurance Company effective during the policy periods of Riverport's assigned risk policies in many of the same states. Riverport also asks the court to declare and adjudicate

the rights and obligations of the parties with respect to the Riverport and SUNZ insurance policies. Countrywide filed a counterclaim asserting that Riverport mishandled and denied claims in bad faith and in breach of contract.

## I.  Background

Riverport is a carrier that provides workers' compensation insurance policies in the residual markets for Tennessee, Indiana, Arkansas and Iowa.  Residual markets exist to provide employers, who are unable to secure workers' compensation coverage on the voluntary market, with a means for insuring their operations through a designated carrier. These residual markets are established by statute and the states' insurance commissioners are given authority to administer the markets.

Each state has its own detailed statutory and regulatory framework governing its respective assigned risk market.  The states have similar requirements and procedures for determining employer eligibility in their assigned risk markets.  When an employer first seeks coverage in the assigned risk market, it must submit an application to the state's workers' compensation insurance plan administrator. The plan administrator determines whether the employer is eligible to obtain a workers' compensation policy through the assigned risk market and binds coverage.  Once a policy of workers'compensation insurance has been issued, the policy may not be cancelled by the carrier unless or until all of the statutory and regulatory requirements for cancellation have been met.  Each state's statutory and regulatory framework includes mandatory dispute resolution processes and procedures designed to facilitate efficient resolution of disputes between employers and insurers.

2

Riverport's claims involve disputes over whether the operations of the Countrywide defendants in each state were properly classified under each state's underwriting rules so proper premiums were paid. Riverport contends that the workers' compensation policies should be cancelled because Countrywide's operations should have been classified as those of a professional employer organization under its policy underwriting rules. Riverport further states the policies should have been issued as multiple coordinated policies in the assigned risk pool markets and premiums charged accordingly. Riverport contends Countrywide's failure to properly classify its clients resulted in materially increased risks of loss as well as insufficient premiums being collected for the policies.

Countrywide contends that by filing this action without exhausting the administrative remedies available in the individual states, Riverport is attempting to circumvent the regulatory framework in each state. Countrywide asks the court to dismiss Riverport's claims based on Riverport's failure to exhaust its administrative remedies provided in the individual states. Countrywide further asks the court to dismiss Riverport's claim seeking rescission and cancellation of the workers' compensation policies Riverport issued to Countrywide on the grounds the requested relief is contrary to the applicable law in each state.

Riverport moves to dismiss Countrywide's counterclaims and affirmative defenses because Countrywide has failed to exhaust its administrative remedies concerning any alleged improper handling of claims by Riverport, cancellation of the policies of insurance, and disputes regarding the premiums to be paid for workers' compensation insurance.

## II. Standard of Review

Both Riverport and Countrywide have filed competing motions, arguing that the other party has failed to exhaust mandatory administrative remedies prior to bringing its claims in federal court. A motion to dismiss for failure to exhaust administrative remedies is a factual attack on the court's subject matter jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *see also Valley Mechanical Inc. v. BB&T Ins. Servs. Inc.*, 2014 WL 2871475 at *2 (E.D.Tenn Jun. 24, 2014). In analyzing factual attacks, the court must weight conflicting evidence and determine whether subject matter jurisdiction exists. *Id.* Here, subject matter jurisdiction is alleged based on diversity of citizenship. As such, the court must determine if a party's failure to exhaust administrative remedies prevents the court from exercising jurisdiction over the claims. *Id.* at 3.

## III. Analysis

Generally, in the applicable states, disputes under the workers' compensation insurance plan must exhaust two levels of administrative review: first, review by the Plan Administrator; and, second, review of the Plan Administrator's decision by the state's Insurance Commissioner. The Tennessee legislature has provided detailed rules for contesting workers' compensation insurance premiums. The relevant statute mandates that every insurer and rate service organization shall provide reasonable means whereby any person aggrieved by the application of its rating system may be heard on written request to review the manner in which the rating system has been applied in connection with the insurance afforded. Tenn. Code Ann. § 56-5-309(b). If the insurer fails to grant or reject the request within thirty (30) days, the applicant may proceed in the same manner as if the

4

application had been rejected. *Id.* Any party affected by the action of the insurer on the request may, within thirty (30) days after written notice of the action, appeal to the Commissioner who, after a hearing may affirm, modify or reverse the action. *Id.* Each policy state has established the same framework. *See* Iowa Code §§ 515A.9 and 4-A-10-b(a); Ark. Code §§ 23-67-219(3)(B)(i)-(iii) and 054-00-054; and Ind. Code § 27-7-2-20.3(c)(2) and Ind. WCIP Art. VIII.

Pursuant to § 56-5-309(d), the Tennessee Department of Commerce and Insurance promulgates administrative rules to implement § 309(b). The rules prescribe the procedures for requesting a rate review or audit and for appealing any decision. *See* Tenn. Comp. R. & Regs. 0780-1-82-.05 and 0780-1-82-.06. The rules also provide that a party aggrieved by the Commissioner's final order may seek judicial review under Tenn. Code Ann. § 4-5-322.

In Tennessee, when a statute provides for an administrative remedy, an aggrieved party must ordinarily exhaust the remedy before seeking to utilize the judicial process. *Ready Mix, USA, LLC v. Jefferson Cnty*, 380 S.W.3d 52 (Tenn. 2012). Even when exhaustion is not mandatory, it is within a court's discretion to dismiss a case for failure to exhaust administrative remedies. *Id.* at 64. The exhaustion of administrative remedies doctrine reflects the courts' deference to administrative expertise and provides that parties whose acts and interests are overseen by an administrative agency ordinarily may not obtain judicial relief until all prescribed administrative remedies have been pursued to their conclusion. *Valley Mechanical*, 2014 WL 2871475 at *5. This doctrine enables an administrative agency to "(1) function efficiently and have an opportunity to correct its

5

own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review." *Ready Mix*, 380 S.W.3d at 63. Requiring that administrative remedies be exhausted leaves courts better equipped to resolve difficult legal issues by allowing an agency to perform functions within its special competence. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 839 (Tenn. 2008).

With respect to workers' compensation policies issued in Tennessee's residual market, the Tennessee legislature expressly requires the Commissioner of Insurance to implement a residual market plan that includes a method for the resolution of disputes between insureds and insurers. See Tenn. Code Ann. § 56-5-114(c).

The court finds instructive the reasoning of Judge Collier in *Valley Mechanical*. The plaintiff in *Valley Mechanical* filed suit against its workers' compensation insurer asserting claims for unjust enrichment, negligence, misrepresentation, and fraud based on allegations that the insurer had misclassified the plaintiff's operations and overcharged the plaintiff for premiums. Judge Collier granted the defendant's motion to dismiss the case based on the plaintiff's failure to exhaust available administrative remedies. Judge Collier explained:

> In fact, there are several good reasons for requiring Valley to exhaust the Tennessee administrative process first. Section 56-5-309 and its implementing regulations set up a detailed administrative process to address the precise subject matter of the present suit. The rules set forth specific administrative procedures for reviewing insurance rating classifications and remedying errors found through reimbursement of premiums. Additionally, the Tennessee Commissioner of Commerce and Insurance may impose civil penalties if wrongful behavior is found. The court also notes that the need for agency expertise and uniformity in decision making further strengthens the argument for exhaustion.

6

*Valley Mechanical*, 2014 WL 2871475 at *26-27. The Tennessee Workers' Compensation Insurance Plan governs the Countrywide defendants eligibility for participation in the assigned risk market, the requirements for the policies Riverport was required to issue, premiums to be charged, and procedures to be followed to change or cancel the policies after they were issued. In addition, the Plan also provides its own detailed dispute resolution mechanism as required by Section 56-5-114(c). Iowa, Arkansas and Indiana all have statutory schemes that provide for a remedial administrative process for disputes such as those involved in this case. The states' insurance departments have the experience and expertise to handle disputes arising under each state's assigned risk plan. The use of the states' dispute resolution procedure is far more economical and efficient than pursuing a ruling on four different state plans in federal court.

Moreover, this case involves complex issues of state law bearing on policy problems of substantial public import. Riverport seeks a rescission of workers' compensation insurance policies that it was required to issue to Countrywide in the assigned risk markets in Tennessee, Indiana, Iowa, and Arkansas. Because the policies were issued in the assigned risk market, they are heavily regulated in each of the states. The claims at issue require the court to interpret and apply the underwriting rules and rating classifications in each state to determine whether the Countrywide defendants' operations fall within the definition of "Professional Employer Organization." State insurance statutes comprise a complex regulatory scheme for the state's insurance industry, and the enactment of a regulatory scheme demonstrates the states' overriding interest in this area. *See Accident Fund v. Baerwaldt*, 579 F.Supp. 729, 733 (W.D.Mich. 1984). Tennessee, Iowa, Indiana,

and Arkansas have specifically created administrative dispute resolution procedures to allow state agencies to handle the disputes that the parties' claims involve with rights of judicial review in the state courts.

In light of the above legal principles, the court will require the parties to exhaust administrative remedies for their claims before proceeding with a lawsuit in this court. If after the process has concluded, the parties have outstanding legal claims coming under this court's jurisdiction and not otherwise barred, either party may choose to refile suit.

### IV. Conclusion

For the foregoing reasons, the court will grant the motions to dismiss [R. 57, 70] and will **DISMISS, WITHOUT PREJUDICE,** all claims and counterclaims of the parties in this case.[1] The motions to strike [R. 92, 95] are denied as moot.

*[signature]*
**UNITED STATES DISTRICT JUDGE**

---

[1] Defendant SUNZ Insurance Company has not filed a motion to dismiss the claims asserted against it. However, because parties cannot waive defects in subject matter jurisdiction, the court may address the issue on its own motion and at any stage of the proceedings. *See Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir. 1988). The court finds that the analysis herein applies equally to the claims asserted against SUNZ Insurance Company and those claim dismissed for failure to exhaust administrative remedies.